STATE OF NORTH CAROLINA v. WILLIAM ABDULLAH MUSTAFA

No. 9215SC980

(Filed 4 January 1994)

1. **Criminal Law § 813 (NCI4th)— character for truthfulness— request for pattern instruction—no supporting evidence**

The trial court did not err by denying defendant's request to give the pattern instruction on consideration of a witness's

character for truthfulness as it related to defendant's pretrial exculpatory statement to the police since the pattern instruction applied only to testimony at trial and not to pretrial exculpatory statements.

**Am Jur 2d, Trial §§ 1338-1352.**

2. **Rape and Allied Offenses § 190 (NCI4th)— first-degree rape— use of weapon—submission of lesser offense not required**

The trial court properly instructed on first-degree rape and did not err in failing to instruct on second-degree rape where both defendant and the victim agreed that a knife and a gun were displayed during the commission of the crime.

**Am Jur 2d, Rape § 110.**

3. **Evidence and Witnesses § 84 (NCI4th)— defendant's military service record—inadmissibility in rape case**

Evidence of defendant's good military record or military service was not relevant to his guilt or innocence in this rape case, and the trial court therefore properly excluded it.

**Am Jur 2d, Evidence §§ 251 et seq.**

4. **Evidence and Witnesses § 120 (NCI4th)— victim's prior sexual conduct—inadmissibility**

A rape victim's prior consensual relationship with her boyfriend which was ongoing since the 1970's did not amount to a pattern of sexual behavior closely resembling the events that took place in this case, and the trial court therefore did not err in excluding evidence of the victim's prior sexual conduct. N.C.G.S. § 8C-1, Rule 412(b)(3).

**Am Jur 2d, Rape §§ 55 et seq.**

Appeal by defendant from judgments entered 13 February 1992 by Judge Henry V. Barnette, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 31 August 1993.

*Attorney General Lacy H. Thornburg, by Associate Attorney General John J. Aldridge, III, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

JOHNSON, Judge.

Defendant, William Abdullah Mustafa, was indicted on 16 September 1991 for the criminal offenses of first degree sexual offense, first degree rape, kidnapping, and robbery with a dangerous weapon. Defendant was convicted of first degree rape, first degree sexual offense and misdemeanor larceny. The trial court dismissed the charge of kidnapping at the close of the evidence. Defendant received a sentence of life in prison. Defendant gave timely notice of appeal to this Court.

The evidence presented by the State showed the following: During the night of 30 August 1991 and the early morning hours of 1 September 1991, the victim, Ms. Sheena Gladden Cheek, was at the Rock Creek Lounge. As Ms. Cheek proceeded to leave the club, she was approached by a friend, Mr. Danny Ray Timmins, and began conversation with him. While conversing, Ms. Cheek was approached by defendant. Ms. Cheek has known defendant for fourteen years by the name of Butch Garner.

After this conversation, Mr. Timmins asked Ms. Cheek for a ride home. While Ms. Cheek drove to Mr. Timmins' home, defendant followed and parked across the street. Defendant asked Mr. Timmins if he could park in Mr. Timmins' driveway; Mr. Timmins denied this request. Ms. Cheek then left Mr. Timmins' home, and defendant followed, blowing the horn and flashing his headlights. After overtaking Ms. Cheek twice, defendant persuaded Ms. Cheek to pull over to the side of the road. Defendant indicated that he was having car trouble and asked for a ride back to the lounge. Defendant said that he wanted to return to the lounge because somebody had taken something from his car. Before returning to the lounge, Mr. Joe Patterson drove up on his motorcycle and asked defendant and Ms. Cheek if they needed help. Defendant responded no and Mr. Patterson drove off.

Once defendant and Ms. Cheek arrived at the lounge, Ms. Cheek stayed in the van while defendant went to look for a friend. After defendant failed to find this friend, defendant told Ms. Cheek to take him back to his car located at the Shady Oak Service Station.

After returning to the service station, defendant shoved his knee in Ms. Cheek's chest and drew a knife placing the point of the knife under Ms. Cheek's throat. While holding the knife to Ms. Cheek's throat, defendant patted Ms. Cheek down and retrieved

a gun. Holding the gun on Ms. Cheek, defendant told Ms. Cheek to take her clothes off. When Ms. Cheek did not take her top off, defendant told her that "You could do it this way or you can die."

Defendant forced Ms. Cheek to perform oral sex on him. Defendant then penetrated Ms. Cheek's rectum with his penis. After the anal sex, defendant had forced vaginal intercourse with Ms. Cheek. During all acts, defendant held the gun to Ms. Cheek's head.

Defendant had Ms. Cheek get into the passenger's side of the van while continuing to hold the gun to Ms. Cheek's head. He told Ms. Cheek that she was going to get him some drugs. Ms. Cheek then directed defendant to the location of her son in Ramseur. After arriving at the Ramseur location, Ms. Cheek attempted to get out of the van with her purse, but defendant grabbed the purse back from Ms. Cheek. At this point, Ms. Cheek ran from the van screaming. Defendant sped off, and Ms. Cheek and other relatives attempted to follow him.

Ms. Cheek then reported the incident to a Liberty police officer, Lieutenant Smith. Because the incident took place out of his jurisdiction, Lieutenant Smith requested that the Alamance County Sheriff's Department take over the case.

Deputy Roger Lloyd of the Alamance County Sheriff's Department went to the Shady Oak Service Station later that day with Ms. Cheek and found defendant's car stripped of license plates and the window broken out with a bullet hole in it. At about 6:00 a.m. that morning, Deputy Lloyd took Ms. Cheek to the hospital and turned the case over to Detective Phil Ayers.

The next night Deputy Lloyd planned to serve arrest warrants on defendant charging him with kidnapping, a sexual offense, rape and robbery. Defendant, however, turned himself in and gave a statement to Deputy Lloyd. Defendant said that on the night in question, Ms. Cheek asked him to follow her to Mr. Timmins' house. After leaving Mr. Timmins' house, defendant said that he and Ms. Cheek stopped at Shady Oak Service Station to smoke. The two then got into an argument over drugs and Ms. Cheek pulled a gun on him. Defendant then pulled out one of the four knives he possessed and proceeded to disarm Ms. Cheek. After he took her gun, he put away his knife and defendant and Ms. Cheek had consensual sex. Defendant then stated that they left the service station and went to Ms. Cheek's son's house to get drugs. However,

when defendant saw Ms. Cheek's relatives come out of the house, he left with Ms. Cheek's purse and papers in the van. He returned to the service station and switched the license plates on the van with those on the car.

Others that testified at trial included: Ms. Diana Roark, an emergency room nurse, and Dr. James Strickland, an emergency room physician. Both testified that Ms. Cheek was visibly upset and crying when she came to the emergency room. Dr. Strickland testified that his examination revealed ten linear tears in the bottom of Ms. Cheek's rectum consistent with forced penetration.

[1] By defendant's first assignment of error, defendant contends that the trial court erred in instructing the jury about defendant's reputation for truthfulness in evaluating his statement to the police. We disagree.

The trial court has wide discretion in presenting the issues of a case to the jury so long as the law is adequately explained. *State v. Higginbottom*, 312 N.C. 760, 324 S.E.2d 834 (1985). The purpose of a charge is to give a clear instruction which applies the law to the evidence in such a manner as to assist the jury in understanding the case and in reaching a correct verdict. *State v. Harris*, 306 N.C. 724, 295 S.E.2d 391 (1982). Where a requested instruction is a correct statement of the law and supported by the evidence, the trial court is required to give the instruction; however, the instruction is not required to be given verbatim. It is sufficient if the instruction is given in substance. *State v. Corn*, 307 N.C. 79, 296 S.E.2d 261 (1982).

In the case *sub judice*, counsel for defendant requested the trial judge give North Carolina Pattern Jury Instruction 105.30, which provides that a jury may consider evidence of a witness' character for truthfulness in deciding whether to believe or disbelieve his testimony at trial. The trial judge pointed out to defense counsel that there had been no testimony at trial by defendant which would give rise to such an instruction. Defense counsel then modified his request that the same instruction be given to relate to defendant's exculpatory pre-trial statement. The judge denied the request.

The trial judge correctly denied defendant's request because the patterned instruction applies to testimony at trial and not exculpatory statements. A trial judge is only required to give instructions that are an accurate statement of the law and evidence.

STATE v. MUSTAFA

[113 N.C. App. 240 (1994)]

[2] By defendant's second assignment of error, defendant contends that the trial court erred in not instructing the jury on second degree rape and second degree sexual offense. More specifically, defendant alleges that there was an element of first degree rape that was in factual dispute, thereby requiring a charge of a lesser-included offense. We disagree.

As a general rule, the trial judge must charge upon a lesser-included offense whenever there is some evidence "which might convince a rational trier of fact to convict the defendant of a less grievous offense." *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981). "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone v. United States*, 380 U.S. 343, 350, 13 L.Ed.2d 882, 888 (1965).

The crime of first degree rape and second degree rape contain essentially the same elements. The sole distinction between first degree rape and second degree rape is the element of the use or display of a dangerous weapon. *State v. Barnette*, 304 N.C. 447, 284 S.E.2d 298 (1981). To sustain a conviction for first degree rape, the evidence need only show that a weapon was "displayed or employed in the course of the rape." *State v. Blackstock*, 314 N.C. 232, 241, 333 S.E.2d 245, 251 (1985).

In the instant case, both defendant and the victim agree that weapons were displayed during the altercation in the van. Ms. Cheek alleges that defendant took her gun and displayed a knife to coerce her into sexual intercourse. Defendant alleges an argument broke out over drugs and Ms. Cheek displayed a gun. Defendant alleges he then displayed his knife and disarmed Ms. Cheek and that thereafter, they had consensual sex.

All of the elements for first degree rape were present in the evidence; the only fact in dispute was whether the sex was consensual. The jury was properly instructed on this issue, and as such, we find that the trial court correctly denied the instruction to charge on a lesser-included offense.

[3] By defendant's third assignment of error, defendant contends that the trial court erred in not allowing defendant to present evidence that he was honorably discharged from the marines. We disagree.

North Carolina General Statutes § 8C-1, Rule 404(a)(1) (1992) provides, in pertinent part, that evidence of a pertinent trait of the accused's character may be admissible. Pursuant to this rule, an accused may only introduce character evidence of "pertinent" traits of his character and not evidence of overall "good character." *State v. Squire*, 321 N.C. 541, 364 S.E.2d 354 (1988). In criminal cases, in order to be admissible, a pertinent character trait must bear a special relationship to or be involved in the crime charged. *State v. Bogle*, 324 N.C. 190, 201, 376 S.E.2d 745, 751 (1989). In determining whether a general "law-abidingness" character trait was admissible in a criminal case, the trait must be pertinent or relevant to the crime charged. *Squire*, 321 N.C. at 548, 364 S.E.2d at 358.

Defendant asserts that the omitted military information is relevant to show whether defendant was the type of person to break civilian laws and commit forcible unlawful sex acts. We disagree. We believe that a good military record or military service is not relevant to defendant's guilt or innocence in this rape case. The trial court properly excluded this evidence.

[4]  By defendant's last assignment of error, defendant contends that the trial court erred in overruling defendant's motion to introduce evidence of prior sexual conduct of the prosecuting witness. Defendant's argument is meritless.

Except when found to fall within one of the stated exceptions to our Rape Shield Act, the sexual history of rape victims is irrelevant. *State v. Baron*, 58 N.C. App. 150, 292 S.E.2d 741 (1982). The North Carolina Rape Shield Act provides in pertinent part:

> (b) Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:
>
>    . . .
>
>    (3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented[.]

North Carolina General Statutes § 8C-1, Rule 412(b)(3) (1992).

Contrary to the assertions by defendant, Ms. Cheek's previous sexual encounter with a boyfriend does not amount to a pattern of sexual behavior closely resembling defendant's version of the incident. During an *in-camera* examination of Ms. Cheek and her previous boyfriend, Mr. David Patterson, the evidence revealed an on-going relationship since the 1970's. We find that Ms. Cheek's prior consensual relationship with Mr. Patterson does not amount to a pattern of sexual behavior closely resembling the events that took place in the case *sub judice*. The trial court properly excluded this evidence.

The decision of the trial court is affirmed.

Judges WYNN and JOHN concur.