STATE OF NORTH CAROLINA v. DONALD ANDRE BARKLEY

No. COA00-731

(Filed 3 July 2001)

**1. Evidence— blood drawn for unrelated investigation—DNA testing**

The trial court did not err in a first-degree rape and kidnapping prosecution by denying defendant's motion to suppress the results of a blood analysis where defendant contended that his consent to having his blood drawn was limited to analysis for an unrelated murder investigation and that his Fourth Amendment rights were violated. Once the blood was lawfully drawn, defendant no longer had a possessory interest in the blood and suffered no additional intrusion by the comparison of the DNA characteristics with the evidence in this case. Moreover, the court's findings support the conclusion that a reasonable person would have understood that his blood analysis could be used generally for investigative purposes.

**2. Evidence— other offense—similarities—not too remote in time**

The trial court did not err in a prosecution for first-degree kidnapping and first-degree rape by admitting the testimony of another woman that defendant raped her and evidence that defendant was convicted of that rape. The similarities support a reasonable inference that the crimes were committed by the same person and, although the rapes were six years apart, defendant was paroled only three and a half months prior to this crime.

**3. Criminal Law— continuance denied—prior victim's testimony—notice**

The trial court did not abuse its discretion in a prosecution for first-degree rape and first-degree kidnapping by denying defendant's motion for a continuance where defendant argued that he was not given notice prior to trial that the State would offer a prior victim's testimony, but the State notified defendant of hearsay statements made by defendant which would be offered by someone other than a law enforcement officer. Pursuant to N.C.G.S. § 15A-903(a), the State is not required to disclose the name of the witness testifying to the statements or the circumstances surrounding the statements.

STATE v. BARKLEY

[144 N.C. App. 514 (2001)]

**4. Rape— first-degree—alternative theories**

There was no plain error in a rape prosecution where the trial court instructed the jury that it could find defendant guilty of first-degree rape if it found that defendant used a dangerous weapon or that the victim was seriously injured where there was evidence to support both theories.

**5. Rape— first-degree—second-degree not submitted**

The trial court in a first-degree rape prosecution did not err by failing to submit the lesser offense of second-degree rape to the jury where all of the evidence established that some type of sharp weapon was placed against the victim's neck.

**6. Rape— first-degree—indictment—short form**

A short form indictment for first-degree rape was constitutional.

**7. Evidence— forensic evidence from unrelated case—not turned over**

The trial court did not err in a first-degree kidnapping and first-degree rape case by denying defendant's request to turn over all records and documents regarding DNA analysis and forensic evidence in an unrelated murder case where DNA tests from that case led to this conviction. The court reviewed the records in camera and provided defendant with chain of custody records.

Appeal by defendant from judgments entered 10 September 1999 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 May 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Stewart L. Johnson and Assistant Attorney General Anne M. Middleton, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

MARTIN, Judge.

Defendant was tried upon bills of indictment charging him with first degree rape and first degree kidnapping of Juanita McClendon on 12 April 1996. The State's evidence tended to show that

McClendon was walking to a friend's house in Charlotte at approximately 1:00 a.m. when she was grabbed from behind. Defendant stuck something sharp in her neck, which she believed was a knife, and grabbed her by the mouth. Defendant pushed McClendon down the street and took her back behind a building in an area that was not lighted. He then threw McClendon on the ground and pulled off her clothes. He forced McClendon to have vaginal, anal and oral sex twice during the incident. When McClendon tried to get up or scream he repeatedly hit her in the face and fractured her jaw. Before defendant left, he asked McClendon "where was his knife." McClendon ran home and called the Charlotte-Mecklenburg Police Department. She was taken to Carolinas Medical Center for an examination, including a rape kit, and a police officer took her statement. Following the examination, she underwent a three to four hour surgery to repair her jaw. McClendon was unable to identify defendant in a line-up; DNA evidence linked defendant to the rape and kidnapping.

Defendant's motion to suppress the blood evidence was heard in a *voir dire* hearing prior to the start of the trial. The State's evidence tended to show that defendant was a suspect in a murder investigation in June 1996. The police had information that defendant was seen with the victim the night of the murder and that he had admitted to committing the crime. On 11 June 1996, defendant was picked up by police on a habitual felon indictment. While in custody, he complained of an unrelated injury to his hand and was escorted to Carolinas Medical Center for treatment. While defendant was waiting for treatment by the physician, Investigator Graue asked defendant if he would consent to give his blood to the investigators. After defendant responded "no," Officer Holl informed defendant that he could obtain a search warrant. Defendant then indicated that he would cooperate but would not sign a consent form. After defendant was treated for the hand injury, Officer Holl asked him again if he would voluntarily give the police some blood and defendant responded "yes." The blood was drawn while he was at the hospital. Officer Holl testified that he did not tell defendant why the blood was being drawn, and that defendant was also a suspect in other crimes.

Defendant testified on his own behalf at the *voir dire* hearing. He stated he understood that he was being arrested on an indictment for habitual felon status stemming from possession of cocaine, but that he was also made aware that he was a suspect in a murder case. He further stated that the officers asked him questions at the hospital regarding his knowledge of and contact with the murder victim, but

did not indicate that he was also a suspect in a rape case. He testified that he understood that the blood was drawn from his arm "strictly" to be used in comparison with the DNA found in the murder case, and that he agreed to have the blood drawn to obtain treatment and to exonerate himself of the murder. While defendant conceded on cross-examination that no officer told or promised him that the blood would be drawn solely for use in the murder investigation, he stated that "the atmosphere and the contents of their questioning lead me to believe that was the purpose that the blood was being drawn for." At the conclusion of the hearing, the court denied the motion to suppress. The court then heard defendant's motion to compel discovery of the records pertaining to the collection of defendant's blood during the murder investigation; defendant was specifically concerned about the chain of custody of the DNA samples. The court reviewed the materials *in camera*, determined defendant had the necessary records and then deemed the remainder of the records to be irrelevant and ordered the clerk to seal them.

The court conducted another *voir dire* hearing during the trial pertaining to admissibility of the testimony of Jacqueline Ferguson pursuant to G.S. § 8C-1, Rule 404(b). At the hearing, Ferguson testified that she was raped on 4 August 1990, and identified defendant as her assailant. She described the events leading up to and during the rape, and stated that she was not enticed to testify based on a deal with the State. On cross-examination, defendant attacked her credibility by inquiring about her drug use and other allegations of rape. The court also heard testimony regarding the admissibility of court records showing that defendant had been convicted of second degree rape in Mecklenburg County in connection with the assault on Ferguson. Defendant testified at the hearing that his sexual encounter with Ferguson was in exchange for drugs, and that he pled guilty to the charge because it would be difficult to establish his innocence and he faced a life sentence if found guilty. The court ruled that the testimony of Ferguson was admissible pursuant to Rule 404(b) and also permitted the evidence regarding his conviction. The court denied defendant's motion for a continuance on the grounds that he was given insufficient notice of the State's intent to present the evidence concerning the rape of Ferguson.

The defendant did not offer evidence before the jury.

The court instructed the jury as to the offenses of first degree rape and first degree kidnapping. With regard to the first degree rape

charge, the court instructed the jury that it could find defendant guilty if it found that defendant employed a dangerous weapon or if it found McClendon was seriously injured. Defendant requested a charge on second degree kidnapping in the charge conference but did not object to its omission.

The jury returned a verdict of guilty as to first degree rape and first degree kidnapping. Defendant received a sentence of life imprisonment without parole as to the first degree rape conviction. The court arrested judgment as to first degree kidnapping, entered judgment upon the offense of second degree kidnapping, and sentenced defendant to a minimum term of 59 months to a maximum term of 80 months in prison. Defendant appeals.

---

I.

[1] Defendant first assigns error to the court's denial of his motion to suppress the results of the analysis of his blood. Defendant argues that he consented to have his blood drawn to exonerate himself in the murder investigation and that the use of his blood to implicate him in the present case violated his constitutional right to be free from unreasonable searches.

An individual has both a state and federal constitutional right to freedom from unreasonable searches and seizures. U.S. Const. amend. IV; N.C. Const., art. 1, §§ 19, 20. Our courts have held that the taking of blood from a person constitutes a search under both constitutions. *Schmerber v. California*, 384 U.S. 757, 16 L.Ed.2d 908 (1966); *State v. Carter*, 322 N.C. 709, 370 S.E.2d 553 (1988).

Defendant asserts first that a blood sample obtained in an uncharged crime cannot be used as evidence against him in another unrelated crime without violating his constitutional rights under the Fourth Amendment. Although this is an issue of first impression in North Carolina, other jurisdictions have considered the issue. In *New York v. King*, 663 N.Y.S.2d 610, 232 A.D.2d 111 (1997), a case with similar facts to the one before us, the Supreme Court of New York held that the defendant's Fourth Amendment rights were not violated by using the defendant's blood sample, which was drawn with probable cause in an August 1991 rape and robbery, to convict the defendant of a May 1991 rape and robbery. After determining that the blood was lawfully seized in the investigation of the August rape, the court opined:

It is also clear that once a person's blood sample has been obtained lawfully, he can no longer assert either privacy claims or unreasonable search and seizure arguments with respect to the use of that sample. Privacy concerns are no longer relevant once the sample has already lawfully been removed from the body, and the scientific analysis of a sample does not involve any further search and seizure of a defendant's person. In this regard we note that the defendant could not plausibly assert any expectation of privacy with respect to the scientific analysis of a lawfully seized item of tangible property, such as a gun or a controlled substance. Although human blood, with its unique genetic properties, may initially be quantitatively different from such evidence, once constitutional concerns have been satisfied, a blood sample is not unlike other tangible property which can be subject to a battery of scientific tests. In this regard it bears noting that the defendant's sample was contemporaneously tested against all the stain evidence seized during both investigations in a single scientific procedure.

*Id.* at 614-15, 232 A.D.2d at 117-18. A similar conclusion has been reached by the courts in Indiana, Maryland, Georgia, and Florida. *See Smith v. State,* —— Ind. ——, 744 N.E.2d 437 (2001) (stating once a DNA profile is obtained, the owner no longer has any possessory or ownership interest in it); *Wilson v. State,* 132 Md. App. 510, 550, 752 A.2d 1250, 1272 (2000) (holding that the use of the defendant's DNA in an unrelated case did not violate his Fourth Amendment rights because "[a]ny legitimate expectation of privacy that the appellant had in his blood disappeared when that blood was validly seized"); *Bickley v. State,* 227 Ga. App. 413, 415, 489 S.E.2d 167, 170 (1997) (holding that the defendant's Fourth Amendment rights were not violated when the defendant's blood was drawn pursuant to a warrant and used in an unrelated case and noting "in this respect, DNA results are like fingerprints which are maintained on file by law enforcement authorities for use in further investigations"); *Washington v. Florida,* 653 So.2d 362 (1994), *cert. denied,* 516 U.S. 946, 133 L.Ed.2d 309 (1995) (holding once the samples were validly obtained in another case, the police were not restrained from using them in the case before the court).

We agree with the conclusion reached by the courts in these jurisdictions. The United States Supreme Court stated "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber,* 384

U.S. at 767, 16 L.Ed.2d at 917. In the case before us, defendant does not challenge the validity of the taking of the blood sample; rather defendant concedes it was done with his consent. Once the blood was lawfully drawn from defendant's body, he no longer had a possessory interest in that blood. The use of the DNA analysis of his blood in this case required no additional chemical analysis which might infringe any privacy interest he might have in the blood; rather, it involved only a comparison of the characteristics of his blood with the evidence in this case. Therefore, defendant suffered no additional intrusion, and for the reasons cited in the foregoing cases, we conclude that his Fourth Amendment rights were not violated by the use of the DNA analysis in the present case.

Nevertheless, defendant argues the use of the DNA analysis should have been limited by the scope of his consent. The taking of blood requires a search warrant unless an exception applies. *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982). Consent to the search by the owner of the item constitutes one exception to the warrant requirement. *State v. Vestal*, 278 N.C. 561, 180 S.E.2d 755 (1971). Defendant argues that he limited his consent to the use of the DNA analysis in the murder investigation only.

The trial court made findings of fact and conclusions of law following a suppression hearing on this issue. The standard of appellate review is whether the findings of fact are supported by competent evidence and whether the findings support the court's conclusions of law. *State v. Brooks*, 337 N.C. 132, 446 S.E.2d 579 (1994). Defendant asserts that the court erred in entering the following conclusion of law:

> That the Defendant freely, voluntarily, understandingly, and knowingly consented to having his blood withdrawn for investigative purposes on June the 11th, 1996.

The court's conclusions of law are "fully reviewable on appeal." *Id.* at 141, 446 S.E.2d at 585 (citing *State v. Mahaley*, 332 N.C. 583, 423 S.E.2d 58 (1992)). In *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L.Ed.2d 297, 302 (1991), the Supreme Court stated that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"

The court's findings indicate that: (1) defendant was arrested on a habitual offender indictment; (2) he was taken to the hospital for

treatment on his hand at his own request; (3) he initially refused to give a blood sample, but after being told by the officers that they could apply for a search warrant, he consented; (4) he knew he was a suspect in the murder case; (5) he consented to have his blood drawn "because he had nothing to hide" but would not sign a consent form; (6) Investigator Holl knew at the time that the Rape Unit was looking for someone named Donald, and (7) the officers made no promises that the blood would solely be used in the investigation of the murder case. We hold that these findings support a conclusion that a reasonable person would have understood by the exchange that his blood analysis could be used generally for investigative purposes, and not exclusively for the murder investigation.

## II.

[2] Defendant next assigns error to the court's admission of the testimony of Jacqueline Ferguson, who accused defendant of raping her in 1990, and to the admission of evidence that defendant was convicted of the rape of Mrs. Ferguson. While the assignment of error in the record on appeal is premised on federal and state constitutional grounds, the argument in his brief is based primarily on G.S. § 8C-1, Rules 404(b) and 403, as was his argument at trial. Notwithstanding the apparent inconsistency between the question presented by the assignment of error and the argument presented in defendant's brief, we will exercise the discretion granted us by N.C.R. App. P. 2 and consider his appellate argument.

Evidence of prior crimes is admissible under Rule 404(b) as long as it is " 'relevant to any fact or issue other than defendant's propensity to commit the crime.' " *State v. Hamilton*, 132 N.C. App. 316, 319, 512 S.E.2d 80, 83 (1999) (quoting *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 853, *cert. denied*, 516 U.S. 994, 133 L.Ed.2d 436 (1995)). In this case, the State argued the evidence of defendant's rape of Jacqueline Ferguson was admissible because it was relevant to show the identity of the perpetrator and to show evidence of a common plan or scheme.

Evidence of another crime "must be sufficiently similar to the crime charged and not too remote in time such that it is more prejudicial than probative under Rule 403." *Id.*

A prior act or crime is sufficiently similar to warrant admissibility under Rule 404(b) if there are "some unusual facts present in both crimes or particularly similar acts which would indicate

that the same person committed both crimes." It is not necessary that the similarities between the two situations "rise to the level of the unique and bizarre." However, the similarities must tend to support a reasonable inference that the same person committed both the earlier and later acts.

*State v. Sokolowski*, 351 N.C. 137, 150, 522 S.E.2d 65, 73 (1999) (citations omitted).

We conclude that the similarities between the rapes of Ferguson and McClendon support a reasonable inference that the crimes were committed by the same person. Both victims were young black females accosted in Charlotte in the early morning hours. In both cases, the victims were grabbed from behind by the mouth and the assailant held a sharp object to their throats while directing them to a dark secluded area. In addition defendant disrobed both victims and forced them to have vaginal and anal sex.

We also conclude the incident involving Ms. Ferguson was not too remote in time from the incident involving Ms. McClendon. In *State v. Davis*, 101 N.C. App. 12, 398 S.E.2d 645 (1990), *disc. review denied*, 328 N.C. 574, 403 S.E.2d 516 (1991), this Court held that a ten year lapse in time between the crimes did not make the earlier crime too remote where the defendant was incarcerated for all but 132 days of that period. Although, in the present case, the rapes were six years apart, the record indicates that defendant was paroled following his conviction for the Ferguson rape only three and a half months prior to the McClendon rape. We hold the rape of Ferguson was not too remote in time and the trial court did not err in admitting Ferguson's testimony pursuant to Rule 404(b) and Rule 403.

For the same reason, we also hold that the court did not err in admitting evidence that defendant was convicted of Ferguson's rape. *See State v. Murillo*, 349 N.C. 573, 595, 509 S.E.2d 752, 765 (1998) (quoting *State v. Stager*, 329 N.C. 278, 303, 406 S.E.2d 876, 890 (1991)) (stating "[a] prior conviction may be a bad act for purposes of Rule 404(b) if substantial evidence supports a finding that defendant committed both acts, and the 'probative value is not limited solely to tending to establish the defendant's propensity to commit a crime such as the crime charged.' "). We additionally reject defendant's argument that the trial court abused its discretion under G.S. § 8C-1, Rule 403 in admitting the testimony regarding his conviction. Defendant contends that since he attempted to enter an Alford plea, without admitting his guilt of the Ferguson rape, the evidence was unduly

prejudicial. However, the evidence admitted before the jury showed only that defendant was convicted, not that he pled guilty. Therefore defendant has failed to show that the court's ruling could not have been the result of a reasoned decision.

[3] Finally, defendant argues that because he was not given notice prior to trial that the State would offer Ferguson's testimony, the trial court erred by denying his motion for a continuance after ruling the evidence admissible. The appellate standard of review of the denial of a motion to continue is abuse of discretion, unless the denial raises a constitutional issue. *State v. McFadden*, 292 N.C. 609, 234 S.E.2d 742 (1977). Defendant asserts that he was deprived of a fair opportunity to defend himself because he was not given notice that the State would offer Ferguson's testimony. "Even when a motion for a continuance raises a constitutional issue and is denied, the denial is grounds for a new trial only when a defendant shows that the denial was erroneous and also that his case was prejudiced as a result of the error." *State v. Hill*, 116 N.C. App. 573, 578, 449 S.E.2d 573, 576, *disc. review denied*, 338 N.C. 670, 453 S.E.2d 183 (1994). The record establishes that the State timely notified defendant of hearsay statements made by defendant which were to be offered by a non-law enforcement officer pursuant to Rule 404(b). Defendant argued before the trial court that the State failed to give him necessary information as to who would offer the statements and what the surrounding circumstances were (i.e. that Jacqueline Ferguson would be testifying), and he therefore needed additional time to prepare for Ferguson's testimony. Pursuant to G.S. § 15A-903(a), however, the State is not required to disclose the name of the witness testifying to the statement or the circumstances surrounding the oral statement. *State v. Strickland*, 346 N.C. 443, 488 S.E.2d 194 (1997), *cert. denied*, 522 U.S. 1078, 139 L.Ed.2d 757 (1998). Therefore, we cannot say that the court erred or abused its discretion in failing to grant defendant's motion for a continuance because the basis for such request had no merit.

### III.

[4] Defendant next assigns error to the court's jury instruction on alternative theories of first degree rape, and to the court's failure to require the jury to be unanimous as to the theory upon which it found defendant guilty. The trial court instructed the jury that it could find defendant guilty of first degree rape if it found defendant used a dangerous weapon or if it found the victim was seriously injured. Although defendant stated his concerns about this instruction during

the charge conference, he did not object to the instruction given by the court as required by N.C.R. App. P. 10(b)(2). We therefore review for plain error. *State v. Holbrook*, 137 N.C. App. 766, 529 S.E.2d 510 (2000). His argument has been previously addressed by our Supreme Court in *State v. Johnson*, 320 N.C. 746, 360 S.E.2d 676 (1987). In *Johnson*, the trial court gave a disjunctive instruction, similar to the one given in this case, with respect to a first degree rape charge. The Court held that there was evidence to support both theories; therefore, the trial court did not err in submitting the general verdict to the jury. *Id.* at 749-50, 360 S.E.2d at 679 (citing *State v. Belton*, 318 N.C. 141, 164, 347 S.E.2d 755, 769 (1986)).

In the present case, there was also evidence to support both theories. McClendon testified that defendant held a sharp object against her neck, and a box cutter with the blade exposed was found at the crime scene. In addition, a physician testified that McClendon suffered compound fractures of the jaw. *See State v. Locklear*, 320 N.C. 754, 360 S.E.2d 682 (1987) (holding that the defendant inflicted a serious injury on a rape victim where the victim's jaw was fractured). We hold the trial court did not err in instructing the jury on the alternate theories shown by the evidence.

### IV.

[5] Defendant next assigns error to the trial court's failure to instruct the jury on the issue of defendant's guilt of second degree rape as a lesser offense. Although defendant did not object to the jury charge and this assignment of error is not properly before us, N.C.R. App. P. 10(b)(2), we consider his argument pursuant to N.C.R. App. P. 2. " 'A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.' " *State v. Mustafa*, 113 N.C. App. 240, 245, 437 S.E.2d 906, 909, *cert. denied*, 336 N.C. 613, 447 S.E.2d 409 (1994) (quoting *Sansone v. United States*, 380 U.S. 343, 350, 13 L.Ed.2d 882, 888 (1965)).

> The crime of first degree rape and second degree rape contain essentially the same elements. The sole distinction between first degree rape and second degree rape is the element of the use or display of a dangerous weapon.

*Id.* (citation omitted).

"To sustain a conviction for first degree rape, the evidence need only show that a weapon was 'displayed or employed in the course of

the rape.' " *Id.* (quoting *State v. Blackstock*, 314 N.C. 232, 241, 333 S.E.2d 245, 251 (1985)). All of the evidence in this case established that some type of sharp weapon was placed against the victim's neck, either a knife or a box cutter. Therefore, we hold this issue was not in dispute and the court did not err in failing to submit the lesser offense of second degree rape to the jury.

## V.

**[6]** Defendant next argues the first degree rape indictment was insufficient to confer jurisdiction on the Superior Court. Specifically, he contends the use of a short form indictment for rape was deemed unconstitutional in *Jones v. United States*, 526 U.S. 227, 143 L.Ed.2d 311 (1999). The identical argument has previously been considered and rejected in *State v. Harris*, 140 N.C. App. 208, 535 S.E.2d 614, *disc. review denied*, 353 N.C. 271, 546 S.E.2d 122 (2000). Accordingly, this assignment of error is overruled.

## VI.

**[7]** Finally, defendant assigns error to the court's refusal to turn over to him all of the records and documents regarding the DNA analysis and forensic evidence in the unrelated murder case. The trial court reviewed the records *in camera* and provided defendant with the chain of custody records for the blood samples taken from him and compared to the evidence in this case. We have reviewed the sealed documents and find no evidence relevant or exculpatory in this case. Thus, we hold that the trial court did not err in denying defendant's request.

No error.

Judges HUNTER and JOHN concur.