Justice NEWBY
dissenting.
I fully agree with and join the dissenting opinion, which correctly applies our waiver precedent and thoughtfully discusses the good faith exception. I am also of the view, however, that, on the record before us, the medical staff who drew defendant’s blood were not state actors. State action is a threshold consideration in any Fourth Amendment analysis. Because the constitutional protections against unreasonable searches and seizures apply only to actions by governmental officials and their agents, and defendant failed to establish that the medical personnel were such agents, the blood draw at issue was not a search contemplated by the Fourth Amendment.
Defendant received treatment for severe intoxication at a private hospital. Upon arrival there, defendant was belligerent and combative toward the medical staff and the officers present. Irrespective of any criminal investigation, “medical staff determined it was necessary to medicate” defendant and draw his blood, though they knew law enforcement might require a blood sample for their DWI investigation. Officers were not present when medical staff drew defendant’s blood. Importantly, nothing in the record suggests the officers coerced, enticed, induced, or otherwise instructed medical staff to draw defendant’s blood or to draw more than was medically necessary.
The Fourth Amendment declares, in relevant part, that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” U.S. Const. amend. IV; see also State v. Garner, 331 N.C. 491, 506-07, 417 S.E.2d 502, 510-11 (1992) (adopting the inevitable discovery exception to the exclusionary rule and noting that our state constitution’s limitation against unreasonable searches and seizures does not confer protections beyond those afforded by the Fourth Amendment). “A ‘search’ occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A ‘seizure’ of property occurs when there is some meaningful interference with an individual’s possessory interests in that *703 property.” United States v. Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85, 94 (1984) (footnotes omitted).
Though a blood draw can constitute a search under the Fourth Amendment, e.g., Missouri v. McNeely, _ U.S. _, _, 133 S. Ct. 1552, 1558, 185 L. Ed. 2d 696, 704 (2013), the Fourth Amendment protects against unreasonable searches or seizures by state actors exclusively, e.g., Burdeau v. McDowell, 256 U.S. 465, 475, 41 S. Ct. 574, 576, 65 L. Ed. 1048, 1051 (1921) (concluding that the Fourth Amendment proscribes only unreasonable governmental action); see also State Action, Black’s Law Dictionary (10th ed. 2014) (“Anything done by a government; . . . an intrusion on a person’s rights... by a governmental entity_”). The Fourth Amendment generally does not apply to a search or seizure, even an unreasonable one, by a private person. See Burdeau, 256 U.S. at 475, 41S. Ct. at 576, 65 L. Ed. at 1051. Thus, evidence' obtained from an unreasonable private search need not be excluded from a criminal trial. See Walter v. United States, 447 U.S. 649, 656,100 S. Ct. 2395, 2401, 65 L. Ed. 2d 410, 417 (1980) (plurality opinion) (“[A] wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and . . . does not deprive the government of the right to use evidence that it has acquired lawfully.” (citing Coolidge v. New Hampshire, 403 U.S. 443, 487-90, 91 S. Ct. 2022, 2048-50, 29 L. Ed. 2d 564, 595-96 (1971))).
In certain cases, however, the Fourth Amendment may limit private conduct when private persons become state actors, thereby acting as “ ‘instrument[s]’ or agent[s] of the state.” Coolidge, 403 U.S. at 487, 91 S. Ct. at 2048-49, 29 L. Ed. 2d at 595 (citations omitted). Whether a private party becomes a state actor “turns on the degree of the Government’s participation in the private party’s activities, a question that can only be resolved ‘in light of all the circumstances.’ ” Skinner v. Ry. Labor Execs.’ Ass’n, 489 U.S. 602, 614-15, 109 S. Ct. 1402, 1411-12, 103 L. Ed. 2d 639, 658 (1989) (internal citations omitted) (quoting Coolidge, 403 U.S. at 487, 91 S. Ct. at 2049, 29 L. Ed. 2d at 595). Relevant factors include “the degree of governmental involvement, such as advice, encouragement, knowledge about the nature of the citizen’s activities, and the legality of the conduct encouraged by the police.” State v. Sanders, 327 N.C. 319, 334, 395 S.E.2d 412, 422 (1990), cert. denied, 498 U.S. 1051, 111 S. Ct. 763, 112 L. Ed. 2d 782 (1991). The defendant, not the State, bears the burden of establishing state action, thus triggering the protections of the Fourth Amendment. See State v. Taylor, 298 N.C. 405, 415, 259 S.E.2d 502, 508 (1979) (“ [I]t is well settled that the burden is on defendant to establish [Fourth Amendment] standing.” (citing, inter alia, Jones v. United States, 362 U.S. 257, 261, 80 S. Ct. 725, 731, 4 L. Ed. 2d 697, *704 702 (1960), overruled, on other grounds by United States v. Salvucci, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980))); see, e.g., Sanders, 327 N.C. at 334, 395 S.E.2d at 422 (admitting the evidence because the defendant “failed to show that [a private citizen’s] seizure specifically of the topaz ring and white gold watch was” “attributable to the State”).
Though the State is on solid legal ground in making its statutory argument, our precedent “requires that we first determine whether, under the facts of this case, there has been a search.” State v. Reams, 277 N.C. 391, 396, 178 S.E.2d 65, 68 (1970), cert. denied, 404 U.S. 840, 92 S. Ct. 133, 30 L. Ed. 2d 74 (1971), overruled on other grounds by State v. Worsley, 336 N.C. 268, 443 S.E.2d 68 (1994); see State v. Raynor, 27 N.C. App. 538, 540, 219 S.E.2d 657, 659 (1975) (“Before the legality of an alleged search may be questioned, it is necessary to first determine whether there has actually been a search.”); see also Reams, 277 N.C. at 396, 178 S.E.2d at 68 (“[W]hen the evidence is delivered to a police officer upon request and without compulsion or coercion, there is no search within the constitutional prohibition against unreasonable searches and seizures.”). Because the Fourth Amendment’s prohibition on unreasonable searches operates only against the government and its agents, Burdeau, 256 U.S. at 475, 41 S. Ct. at 576, 65 L. Ed. at 1051, the nature of the actor remains a threshold question.
Here the record before us does not support the existence of an agency relationship between the medical staff of a private hospital and law enforcement. Nothing in the record suggests the government had anything to do with the blood draw, and defendant fails to persuasively argue that the blood draw was the result of state action. To the contrary, the record reflects that law enforcement never asked the medical staff to draw defendant’s blood and were not in the room during the blood draw. Nothing suggests that law enforcement prompted, enticed, or induced the medical staff to draw more blood than medically necessary. Instead, medical staff drew defendant’s blood for purposes of his medical treatment, irrespective of any criminal investigation. Whether medical staff knew that law enforcement would eventually need a sample of defendant’s blood is irrelevant. See State v. Komegay, 313 N.C. 1, 10-12, 326 S.E.2d 881, 890-91 (1985) (concluding that a private citizen who copied a defendant’s records to turn over to the State Bureau of Investigation in exchange for prosecutorial immunity was not a state agent). When the nurse, “of her own accord,” produced the blood sample, “it was not incumbent on the police to stop her or avert their eyes.” Coolidge, 403 U.S. at 489, 91 S. Ct. at 2049, 29 L. Ed. 2d at 596. Accordingly, there was nothing wrongful about the State’s “acquisition of the [vial of blood] *705 or its examination of [its] contents to the extent that [the blood] had already been examined by third parties.” Walter, 447 U.S. at 656, 100 S. Ct. at 2401, 65 L. Ed. 2d. at 417.
The majority’s puzzling attempt to avoid this issue concludes, in a few lines of dismissive prose, that the State waived any state action argument. The purpose of the waiver rule is to “prevent... errors... that [a] court could have corrected if brought to its attention at the proper time. ” Wall v. Stout, 310 N.C. 184, 188-89, 311 S.E.2d 571, 574 (1984). Here it is beyond dispute that the State briefed the issue of state action before the Court of Appeals and again before this Court.[1] Moreover, the trial court recognized that “[t]he issue with regard to the blood . . . [being] drawn by a third party” was before the court and concluded that “the blood draw... [was] apart of the normal course of treatment and would have occurred without any subsequent police action.” It is our duty as a jurisprudential court to address state action as the threshold legal question in any Fourth Amendment analysis.
Even assuming that a Fourth Amendment search occurred, defendant fails to persuasively argue that he retained any ongoing expectation of privacy in the vial of blood. See State v. Barkley, 144 N.C. App. 514, 518-19, 551 S.E.2d 131, 134-35, appeal dismissed, 354 N.C. 221, 554 S.E.2d 646 (2001). The sample here was lawfully removed from his body, and the State’s analysis of the blood sample did not involve any further search and seizure of defendant’s person. See id. at 518-20, 551 S.E.2d at 134-35; see also Washington v. State, 653 So. 2d 362, 364 (Fla. 1994) (per curiam) (concluding that once the samples were validly obtained in one case, the State was not prohibited from using them in another case), cert. denied, 516 U.S. 946, 116 S. Ct. 387, 133 L. Ed. 2d 309 (1995); Bickley v. State, 227 Ga. App. 413, 415, 489 S.E.2d 167, 170 (1997) (finding no constitutional violation when the defendant’s blood was drawn pursuant to a warrant and used in an unrelated case, noting that, “ [i]n this respect, *706 DNA results are like fingerprints which are maintained on file by law enforcement authorities for use in further investigations” (brackets in original)); Smith v. State, 744 N.E.2d 437, 439 (Ind. 2001) (stating that once a DNA profile is obtained, the owner no longer has any possessory or ownership interest in it); Wilson v. State, 132 Md. App. 510, 550, 752 A.2d 1250, 1272 (2000) (concluding that the lawful use of the defendant’s DNA in an unrelated case did not violate his Fourth Amendment rights because the defendant lost “[a]ny legitimate expectation of privacy that [he] had in his blood... when that blood was validly seized”).
To be sure, “an invasion of bodily integrity implicates an individual’s ‘most personal and deep-rooted expectations of privacy.’ ” McNeely, _ U.S. at _, 133 S. Ct. at 1558, 185 L. Ed. 2d at 704 (quoting Winston v. Lee, 470 U.S. 753, 760, 105 S. Ct. 1611, 1616, 84 L. Ed. 2d 662, 668 (1985)). Such an expectation should be jealously guarded from unreasonable government intrusion. Nevertheless, the Fourth Amendment proscribes only unreasonable governmental action and does not apply to a search or seizure, even an unreasonable one, effectuated by a private party not acting as a governmental agent.
In sum, the threshold question in any Fourth Amendment analysis is whether a person’s reasonable expectation of privacy was invaded by a governmental official or agent. The majority’s analysis erroneously overlooks this foundational principle. Because the constitutional protections against unreasonable searches and seizures apply only to actions by governmental officials and their agents, and defendant failed to establish that the medical staff were such agents, the blood draw at issue was not a search contemplated by the Fourth Amendment.

. Before the Court of Appeals, the State argued, inter alia, that the blood draw was for medical purposes and was not “government action.” Before this Court, the State argued, inter alia, that the blood draw was conducted by a third party actor, not an agent of the police.
The State has also advanced an argument based upon the independent source exception to the exclusionary rule. This exception is distinct from the state action requirement and permits the introduction of evidence initially discovered from an unlawful search “but later obtained independently from activities untainted by the initial illegality.” Murray v. United States, 487 U.S. 633, 537, 108 S. Ct. 2529, 2533, 101 L. Ed. 2d 472, 480 (1988). Regardless, the independent source doctrine presupposes that the invasion of privacy involved a state actor and that a search occurred.