COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Clements and Senior Judge Fitzpatrick
Argued at Richmond, Virginia


DERRICK A. PHARR

                                                          OPINION BY
v.       Record No. 1744-05-4              JUDGE JEAN HARRISON CLEMENTS
                                                          JUNE 26, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Vanessa Antoun for appellant.

Rosemary V. Bourne, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Derrick A. Pharr (appellant) was convicted in a jury trial of rape, in violation of Code

§ 18.2-61, and breaking and entering with intent to commit rape, in violation of Code § 18.2-89.

On appeal, he contends the trial court erred in denying his motion to suppress the

Commonwealth's evidence relating to a buccal swab he voluntarily provided in an unrelated

criminal investigation.  Appellant argues the police's use of the buccal swab in this case to obtain

his DNA profile for comparison with DNA evidence recovered from the victim violated his

rights under the Fourth Amendment.  We disagree and affirm the judgment of the trial court.

I.  BACKGROUND

The facts relevant to this appeal are not in dispute.  During the early morning hours of

August 18, 1999, someone broke into the victim's residence and raped her.  The victim was

unable to identify her attacker.  Samples of seminal fluid were collected from the victim using a

Physical Evidence Recovery Kit (PERK).  Detective Joanne Studer investigated the crime, but

the case remained unsolved.

In June 2001, Detective Roger Siegal arrested appellant in connection with a different breaking and entering with intent to commit rape offense. In that case, appellant was identified by two teenage girls who had awakened to find him in their bedroom with his pants down. The police retrieved a knife and a white rag from the floor of the bedroom and found fingerprints above the window where entry to the home had been gained. Told by Detective Siegal about this evidence, appellant admitted breaking into the residence and being near the victims' beds, but denied bringing the rag into the bedroom.

Believing the circumstances of the offense were indicative of a sexual intent on appellant's part, Detective Siegal, who normally investigated property crimes, requested assistance from the major crimes section of the police department. Detective Robert Bond, who regularly investigated sex crimes, responded to the station where appellant was being interviewed.

Based on the description of the crime, Detective Bond believed that a sex crime might have occurred and wanted to test the white rag for "biological products." He and Detective Siegal told appellant they would like to obtain a buccal swab from him so they could compare his DNA to any DNA evidence found at the crime scene. When the detectives asked appellant "if he would agree to do a buccal swab," he said yes. Appellant then stood up and opened his mouth to let Detective Bond swab the inside of his mouth. Appellant was not a suspect in the unsolved August 18, 1999 rape case at the time.

Ultimately deciding they had other "sufficient evidence to convict [appellant] of the [2001] crime," the police did not obtain a DNA comparison between the white rag and the buccal swab.[1] Appellant's buccal swab, however, did not go unanalyzed.

---

[1] Appellant apparently pled guilty to statutory burglary in the 2001 case.

After obtaining the buccal swab from appellant, Detective Bond returned to his office. There, while reflecting on the circumstances of the 2001 burglary, he recalled the unsolved August 18, 1999 rape case that he had briefly helped Detective Studer investigate. Although it had not occurred to him earlier that the two crimes might be related, based on their proximity and the similar methods of operation used in each, he thought that appellant might also be connected to the earlier offense. The next day, he discussed the 2001 burglary with Detective Studer. Following their discussion, he gave appellant's buccal swab to Detective Studer to compare appellant's DNA with the DNA evidence recovered in the 1999 case.

Shortly thereafter, Detective Studer submitted the PERK samples from the 1999 case and appellant's buccal swab to the state laboratory for a DNA comparison analysis. In October 2004, she resubmitted those items to the state laboratory for a second DNA comparison analysis. Both analyses showed that the DNA extracted from the sperm recovered from anorectal swabs taken from the victim in the 1999 case matched the DNA profile obtained from appellant's buccal swab. Mary Green, the forensic scientist at the state laboratory who performed both DNA comparison analyses, concluded that the "probability of randomly selecting an unrelated individual with the same DNA profile obtained from the sperm fraction of the anorectal swabs [was] one in greater than 6.0 billion, which is approximately the world population."

Following his indictment for the August 18, 1999 offenses, appellant moved to have the buccal swab and all related DNA evidence suppressed on Fourth Amendment grounds. After conducting a suppression hearing, the trial court denied the motion, finding that appellant's reasonable privacy interest in the buccal swab and related DNA evidence ended when he voluntarily provided the buccal swab to the police for purposes of determining his DNA profile for comparison with DNA evidence in a criminal investigation. Thus, the court concluded, the

testing of the buccal swab in the 1999 rape case did not implicate Fourth Amendment protections because appellant "did not have a privacy interest preventing the testing in the 1999 case."

Appellant was subsequently convicted of the August 18, 1999 crimes and sentenced. This appeal followed.

## II. ANALYSIS

On appeal, appellant concedes he voluntarily consented to the taking of the buccal swab so the police could compare his DNA profile to any DNA evidence found at the scene of the 2001 breaking and entering with intent to commit rape offense, for which he had just been arrested. He asserts, however, that, because his consent did not specifically extend to any other criminal investigations and because the buccal swab went unused in connection with the investigation of the 2001 offense, he retained a reasonable expectation of privacy in his DNA sample even after the police lawfully obtained the swab. Thus, he argues, the police's use of the buccal swab to obtain his DNA profile for comparison to DNA evidence recovered from the victim in this unrelated case constituted an illegal search in violation of the Fourth Amendment. Accordingly, he concludes, all DNA evidence related to the buccal swab should have been suppressed as "the fruits of an illegal search" and the trial court erred in denying his motion to suppress that evidence.

The Commonwealth contends the trial court properly denied appellant's motion to suppress the DNA evidence obtained from the buccal swab because appellant relinquished his reasonable expectation of privacy in that evidence when he voluntarily gave the swab to the police knowing it would be tested to identify his DNA profile for comparison in a criminal investigation. We agree with the Commonwealth.

Generally, evidence obtained as the result of a search that violates a defendant's Fourth Amendment rights is inadmissible at a criminal trial and must be suppressed. See, e.g., Johnson

- 4 -

v. Commonwealth, 26 Va. App. 674, 689, 496 S.E.2d 143, 150 (1998) (holding that all evidence obtained by the police pursuant to an unlawful search in violation of the Fourth Amendment "should have been excluded, and the trial court erred in denying the motion to suppress").  On appeal from a trial court's denial of a motion to suppress, the burden is on the appellant to show that the denial of the motion constituted reversible error.  See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).  In reviewing such a denial, we consider the evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from the evidence.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  While "'we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them,'" we "consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment."  McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999) (en banc) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc)).

Subject to certain established exceptions, the Fourth Amendment prohibits "warrantless searches of any place or thing in which a person has a *reasonable* expectation of privacy."  Sheler v. Commonwealth, 38 Va. App. 465, 476, 566 S.E.2d 203, 208 (2002) (emphasis added) (citing Mincey v. Arizona, 437 U.S. 385, 390 (1978)).  Accordingly, the Fourth Amendment "does not protect the merely subjective expectation of privacy, but only those '[expectations of privacy] that society is prepared to recognize as "reasonable."'"  Oliver v. United States, 466 U.S. 170, 177 (1984) (alteration in original) (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

Hence, a "search" within the meaning of the Fourth Amendment occurs only "when the government violates a subjective expectation of privacy that society recognizes as reasonable."[2] Kyllo v. United States, 533 U.S. 27, 33 (2001). And conversely, "a Fourth Amendment search does *not* occur" where society is unwilling to recognize the subjective expectation of privacy as reasonable. Id.; cf. Anderson v. Commonwealth, 25 Va. App. 565, 572, 490 S.E.2d 274, 277 (1997) ("Absent a legitimate expectation of privacy, there can be no violation of the Fourth Amendment."), aff'd en banc, 26 Va. App. 535, 495 S.E.2d 547, aff'd, 256 Va. 580, 507 S.E.2d 339 (1998). Accordingly, while the warrantless "[o]btaining and examining [of human biological] evidence may . . . be a [Fourth Amendment] search if doing so infringes an expectation of privacy that society is prepared to recognize as reasonable," Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989) (citations omitted), the warrantless obtaining and examining of such evidence does not constitute a Fourth Amendment search where the subjective expectation of privacy infringed by the government is not one that society recognizes as reasonable.

Here, there is no question that the DNA sample provided by appellant was validly obtained by the police in connection with their investigation of the 2001 breaking and entering with intent to commit rape offense. Indeed, as previously mentioned, appellant concedes he voluntarily consented to the police's obtaining his genetic material via the buccal swab for the purpose of identifying his DNA profile for comparison in a criminal investigation. Moreover, it is undisputed that appellant did not expressly limit his consent with regard to the police's future

---

[2] For purposes of this appeal, we assume, without deciding, that appellant retained a subjective expectation of privacy in his DNA sample outside the context of the investigation of the 2001 offense.

- 6 -

use of the DNA sample in other criminal investigations when he voluntarily provided the buccal swab.[3]

The question before us, then, is whether an individual who voluntarily provides, without express limitation on its use, a DNA sample to the police during the investigation of a criminal offense retains a reasonable expectation of privacy in that DNA sample sufficient to prevent the police from using it in their investigation of an unrelated criminal offense. To resolve this question, we must determine whether the subjective expectation of privacy infringed by the police's use of the DNA sample in the investigation of the unrelated offense is one that society recognizes as reasonable. If not, the individual's subjective expectation of privacy is not reasonable and the police's use of the DNA sample in the unrelated case is not a "search" within the meaning of the Fourth Amendment.

Although the issue before us is one of first impression in Virginia, the overwhelming weight of relevant authority from our sister states indicates that society is unwilling to recognize as reasonable the subjective expectation of privacy infringed by the government when a DNA sample validly obtained from a suspect in one criminal case is used to analyze and compare the suspect's DNA in an unrelated criminal case.

For instance, the court in People v. King, 663 N.Y.S.2d 610, 614 (N.Y. App. Div. 1997), held that the defendant's Fourth Amendment rights were not violated when a blood sample lawfully obtained from the defendant in connection with the investigation of an alleged August

---

[3] Likewise, the trial court found, as a matter of fact, that, although appellant "had the understanding [that the DNA evidence obtained from the buccal swab] was going to be used for the 2001 offense," the scope of his consent was not implicitly limited to the investigation of that offense. Because this finding is supported by the record and not plainly wrong, we are bound by it. See Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996) ("Both the presence of consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances.").

1991 rape was used by the government to compare the defendant's DNA with DNA recovered from the scene of a May 1991 rape. It is clear, the court stated in reaching that decision, that,

> once a person's blood sample has been lawfully obtained, he can no longer assert either privacy claims or unreasonable search and seizure arguments with respect to the use of that sample. Privacy concerns are no longer relevant once the sample has already lawfully been removed from the body, and the scientific analysis of a sample does not involve any further search and seizure of a defendant's person. In this regard we note that the defendant could not plausibly assert any expectation of privacy with respect to the scientific analysis of a lawfully seized item of tangible property, such as a gun or a controlled substance. Although human blood, with its unique genetic properties, may initially be qualitatively different from such evidence, once constitutional concerns have been satisfied, a blood sample is not unlike other tangible property which can be subject to a battery of scientific tests.

Id.

The courts of other states have reached a similar conclusion. See, e.g., Washington v. State, 653 So. 2d 362, 364 (Fla. Dist. Ct. App. 1994) (per curiam) (holding that, where the defendant voluntarily provided biological samples to the police in one case, the police were not constitutionally restrained from using those samples to prove defendant's guilt in an unrelated case); State v. Hauge, 79 P.3d 131, 141-42 (Haw. 2003) (holding that the defendant's privacy interest in the blood sample used for DNA analysis and comparison in the present burglary case terminated when that sample was lawfully obtained from the defendant in an unrelated robbery case); Patterson v. State, 744 N.E.2d 945, 947 (Ind. Ct. App. 2001) (holding that "society is not prepared to recognize as reasonable an individual's expectation of privacy in a blood sample lawfully obtained by police" in an unrelated case); Wilson v. State, 752 A.2d 1250, 1272 (Md. Ct. Spec. App. 2000) (holding that the subsequent DNA analysis of the defendant's biological sample did not violate his Fourth Amendment rights because any expectation of privacy the defendant had in that sample "disappeared" when it was validly obtained in an earlier, unrelated case); State v. Notti, 71 P.3d 1233, 1238 (Mont. 2003) (holding that the defendant "waived any

reasonable expectation of privacy" in his blood sample and DNA profile when he voluntarily consented to the withdrawal of the blood for DNA testing in an unrelated criminal investigation); Herman v. State, 128 P.3d 469, 473 (Nev. 2006) (holding that "a defendant extinguishes any expectation of privacy by voluntarily providing a DNA sample without limiting the scope of his consent"); State v. Barkley, 551 S.E.2d 131, 134-35, (N.C. Ct. App. 2001) (holding that, where the defendant voluntarily "consented to have his blood drawn to exonerate himself" in a prior case, his Fourth Amendment rights were not violated when the DNA analysis of that blood was used in the present, unrelated case to implicate him); State v. McCord, 562 S.E.2d 689, 693 (S.C. Ct. App. 2002) (holding that the use in the present case of a blood sample obtained from federal authorities to identify and compare the defendant's DNA did not constitute an improper search under the Fourth Amendment because the defendant's "expectation of privacy was extinguished when he voluntarily gave the blood sample to federal authorities [in an unrelated case] without any limitation on the scope of his consent").

Appellant cites Ferguson v. City of Charleston, 308 F.3d 380 (4th Cir. 2002), cert denied, 539 U.S. 928 (2003), as support for his claim that, under the Fourth Amendment, the police could not properly have his DNA sample tested in connection with the investigation of the 1999 offenses without first obtaining his additional, specific consent (or a search warrant authorizing them) to do so. In Ferguson, the Fourth Circuit held that a hospital's policy of turning over obstetrical patients' cocaine-positive urine screens to the police violated the Fourth Amendment because the patients consented to having their urine tested only for medical, as opposed to law enforcement, purposes. Id. at 398-404. Here, however, appellant specifically consented to having his DNA taken, tested, and identified for purposes of criminal investigation, and it was for those purposes that appellant's DNA sample was used by the police in this case. Thus, the principles enunciated in Ferguson are inapposite to the issue before us.

Guided by the foregoing relevant authorities, we conclude that appellant's continued subjective expectation of privacy in his DNA sample outside the context of the investigation of the 2001 offense is not one that society recognizes as reasonable. His reasonable expectation of privacy in that sample ended when he voluntarily provided it to the police for DNA testing and comparison, without limiting its subsequent use for the same purpose in other investigations. Because appellant did not have a reasonable expectation of privacy in the sample when the police used it to obtain his DNA profile for comparison to DNA evidence recovered from the victim in this case, that DNA analysis of the sample did not constitute a Fourth Amendment search. See Kyllo, 533 U.S. at 33 (holding that "a Fourth Amendment search does *not* occur" where society is unwilling to recognize the subjective expectation of privacy as reasonable). Accordingly, the DNA analysis of the validly obtained sample did not trigger Fourth Amendment protections, and the trial court properly denied appellant's motion to suppress.

## III. CONCLUSION

For these reasons, we affirm the judgment of the trial court and appellant's convictions.

Affirmed.