REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1261

September Term, 2013

GEORGE VARRIALE

v.

STATE OF MARYLAND

Zarnoch,
Hotten,
Arthur,

JJ.

Opinion by Arthur, J.

Filed: July 30, 2014

The State charged George Varriale, appellant, with two counts of second-degree burglary, theft over $1,000, and malicious destruction of property, in connection with a 2008 burglary in Glen Burnie, Maryland. The charges were based solely on DNA evidence from a sample that Varriale had voluntarily given in an earlier, successful effort to clear himself of unrelated rape charges.

In pre-trial proceedings in the burglary prosecution, Varriale moved to suppress the DNA evidence. The trial court held a hearing on Varriale's motion to suppress and, ultimately, denied the motion. Thereafter, Varriale entered a conditional guilty plea to burglary in the second degree.

The circuit court sentenced Varriale to four years of imprisonment, with the entirety of the sentence suspended, except for time served. The circuit court also placed Varriale on probation for two years. The State entered a *nolle prosequi* for the remaining counts of the indictment. This timely appeal followed.

## QUESTIONS PRESENTED

Varriale presents the following questions for our review:

> I. Whether the County exceeded the bounds of appellant's consent, thereby rendering its retention and use of his DNA after he was cleared of suspicion, an unreasonable search and seizure?
>
> II. Whether the Maryland DNA Collection Act permits the retention of the DNA of an individual cleared of suspicion in a state or local DNA databank?

For the reasons that follow, we answer no to the first question and yes to the

second question, and we affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

This case involves a homeless man who voluntarily provided DNA samples to the police in order to eliminate himself as a suspect in an alleged rape. Although the DNA sample cleared him of the alleged rape, it disclosed his involvement in an unrelated burglary that took place a few years earlier.

On July 10, 2012, Detective David Wood of the Anne Arundel County Police Department encountered Varriale in a tent in a wooded area behind a liquor store off Crain Highway while the detective was looking for a suspect in an alleged rape. Detective Wood identified himself to Varriale, explained why he was in the area, and asked Varriale if he would sign a form consenting to be searched. The consent form, which states that it is in "Case #12-725920," provides as follows:

> I, <u>George Varriale</u>, do hereby consent to a search of my person for the purpose of furnishing evidence relating to one or more of the following:
>
> *Hair   Blood   Saliva   Fibers   Penile Swabs*
>
> *Pubic Hair Combings   Marks or Injuries   Fingerprints*
>
> *Photographs*
>
> I know that I do not have to consent to a search of my person.
>
> I realize that if I do consent to a body search, that any evidence found to be involved in this investigation, being conducted by the Anne Arundel County Police Department can be used in any future criminal prosecution.

This written consent to search my body is being given by me, <u>George Varriale</u>, to <u>Det. Wood #1371 and any member of the Anne Arundel County Police Dept.</u> and/or medical personnel, voluntarily, without threat or promise of any kind. I am not under the influence of any intoxicating beverage or drug, which would affect my judgment in consenting.[1]

The words "saliva" and "penile swabs" were circled on the form to denote the evidence that Varriale consented to furnish.

Varriale and Detective Wood signed the form, which was dated July 10, 2012. Shortly thereafter, the police collected a sample of Varriale's saliva and a swab of his penis.

Detective Wood did not arrest Varriale or contact him again after that day. The detective did, however, submit the evidence collected from Varriale to the Anne Arundel County crime laboratory for serological and DNA analysis.

Five months later, Ashley Hayes, a forensic DNA analyst at the Anne Arundel County Police Department Crime Laboratory, reported to Detective Wood that a partial DNA profile collected from the alleged rape victim excluded Varriale. Additionally, Ms. Hayes stated that she could not draw a conclusion from a partial DNA profile that was obtained from the swabs of Varriale's penis.[2]

---

[1] [The underlined portions of the document were completed by hand. The rest of the document is a pre-printed form.]

[2] A DNA "profile" is not the same thing as the DNA "sample" that was obtained from Varriale's saliva or from the penile swabs. The DNA profile is a list of unique identifying numbers that are derived from the DNA sample. The profile itself, however, neither contains nor reveals any genetic information about Varriale, other than his sex.

(continued...)

-3-

Without consulting with Detective Wood or informing Varriale, Ms. Hayes uploaded Varriale's DNA profile into the "suspect index" of the County and state DNA databanks. In doing so, Ms. Hayes performed an automatic search of the County databank that compared the DNA profiles of known persons to DNA profiles developed from crime scene evidence. A few days later, Ms. Hayes generated a report that a match had been established between Varriale's DNA profile and a DNA profile associated with the burglary that is the subject of this case: the police had created that profile from a DNA sample that they took from a Coke can at the scene of the burglary.

As stated above, Varriale was subsequently charged with the burglary based on the DNA evidence, and the suppression court denied Varriale's motion to suppress this evidence.

## DISCUSSION

## I.

Varriale first argues that by retaining and analyzing his DNA after they had

---

[2] (...continued)
The numbers in the profile are found by taking measurements of 13 non-coding pairs of genes (or "alleles") on the DNA strands in Varriale's cells. The 13 alleles are described as "non-coding" or as "junk foci," in that they appear to have no impact on any of the measurable or observable characteristics of the human organism. *See generally Williamson v. State*, 413 Md. 521, 542-43 (2010); *State v. Raines*, 383 Md. 1, 45 (2004) (Raker, J., concurring); *Raynor v. State*, 201 Md. App. 209, 219-21 (2011), *cert. granted*, 428 Md. 543 (2012). These junk foci or non-coding alleles, "while useful and even dispositive for purposes like identity, do[] not show more far-reaching and complex characteristics like genetic traits." *Maryland v. King*, 569 U.S. ___, ___, 133 S. Ct. 1958, 1967 (2013).

eliminated him as a suspect in the alleged rape, the Anne Arundel County police conducted an unreasonable, warrantless search in violation of the Fourth Amendment of the United States Constitution. Specifically, Varriale contends that the police exceeded the scope of his consent to a search, which he says was limited to the use of his DNA in the rape investigation alone. While we agree that Varriale may not have unambiguously consented to the use of his DNA outside of the rape investigation, we reject his Fourth Amendment challenge, because the State had no obligation to obtain a warrant before reexamining the DNA sample that it had lawfully obtained.

"When we review a trial court's grant or denial of a motion to suppress evidence alleged to have been seized in contravention of the Fourth Amendment, we view the evidence adduced at the suppression hearing, and the inferences fairly deducible therefrom, in the light most favorable to the party that prevailed on the motion." *Williamson v. State*, 413 Md. 521, 531-32 (2010). Nonetheless, we conduct a *de novo* review of the "ultimate question of constitutionality." *Id*. at 532.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend IV. Because Varriale does not complain of an unconstitutional seizure, we shall focus solely on whether he was subjected to an unconstitutional search.

"A search occurs when an expectation of privacy that society is prepared to recognize as reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). It is obvious that a person has a reasonable expectation of privacy in the physical

integrity of his or her body. *See, e.g.*, *Maryland v. King*, 569 U.S. ___, ___, 133 S. Ct. 1958, 1969 (2013). It is equally obvious that, when the police collected a sample of Varriale's saliva and a swab of his penis, they engaged in a search. *Id.*

A search, however, does not violate the Fourth Amendment if a person consents to it. *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Here, Varriale signed a form consenting to provide a sample of his saliva and a swab of his penis to police.

Although consent must be voluntary in order to be valid, *see in re Anthony F.*, 293 Md. 146, 152 (1982), Varriale does not argue that he was coerced into signing the consent form. Nor does he dispute that he consented to providing his DNA to police. Rather, he contends that the scope of his consent was limited to the initial rationale for the gathering of his DNA: the police's investigation into the alleged rape.

We agree that the consent form is not a model of clarity. While the form states that Varriale's DNA "can be used in any future criminal prosecution," the form does not clearly specify whether the State may use the DNA only in a "criminal prosecution" for the alleged rape that the police were actually investigating, as opposed to some other "criminal prosecution" that is entirely unrelated to the alleged rape. Because we must construe this ambiguity against the State as the drafter, we conclude that the consent form does not contain Varriale's consent to the use of his DNA in criminal prosecutions that are unrelated to the alleged rape.

Nevertheless, if the State lawfully obtains a DNA sample, the retention and

subsequent examination of the sample ordinarily does not itself amount to a search. *See Maryland v. King*, 569 U.S. at \_\_\_, 133 S. Ct. at 1979; *Williamson*, 413 Md. at 547; *Raynor*, 201 Md. App. at 213-16; *Wilson v. State*, 132 Md. App. 510, 550 (2000). Thus, for example, the Court of Appeals has held that when the State lawfully obtained a paper cup that the defendant had discarded, it had no obligation to obtain a warrant before extracting a DNA sample from the saliva on the cup. *Williamson*, 413 Md. at 547. Similarly, this Court has held that when the State lawfully obtained the defendant's blood sample in one criminal investigation, it had no obligation to obtain a warrant before extracting a DNA sample from the blood in a subsequent investigation. *Wilson*, 132 Md. App. at 550. As the *Wilson* Court explained, the re-examination of the validly-obtained sample was no more of a search, for Fourth Amendment purposes, than is the re-examination of validly-obtained fingerprints. *See id.*[3]

For that reason, the ambiguity in the consent form is ultimately immaterial. Even

---

[3] Many other states have also held that the Fourth Amendment does not bar the police from using lawfully-obtained DNA samples in unrelated criminal investigations. *See Washington v. State*, 653 So. 2d 362, 364 (Fla. 1994); *Pace v. State*, 524 S.E.2d 490, 498 (Ga. 1999); *State v. Hauge*, 79 P.3d 131, 145 (Haw. 2003); *Smith v. State*, 744 N.E.2d 437, 439 (Ind. 2001); *Commonwealth v. Gaynor*, 820 N.E.2d 233, 243 (Mass. 2005); *State v. Bowman*, 337 S.W.3d 679, 685 (Mo. 2011); *State v. Notti*, 71 P.3d 1233, 1238 (Mont. 2003); *Herman v. State*, 128 P.3d 469, 473 (Nev. 2006), *overruled in part on other grounds, Nunnery v. State*, 263 P.3d 235 (Nev. 2011); *People v. Baylor*, 118 Cal. Rptr. 2d 518, 521 (Cal. Ct. App. 2002); *People v. Collins*, 250 P.3d 668, 674 (Colo. Ct. App. 2010); *State v. Barkley*, 551 S.E.2d 131, 135 (N.C. Ct. App. 2001); *People v. King*, 232 A.D.2d 111, 117 (N.Y. App. Div. 1997); *State v. McCord*, 562 S.E.2d 689, 693 (S.C. Ct. App. 2002); *Pharr v. Commonwealth*, 646 S.E.2d 453, 458 (Va. Ct. App. 2007).

if Varriale did not unambiguously consent to the use of his DNA in criminal prosecutions that are unrelated to the alleged rape, he unquestionably consented to the taking of a DNA sample at least for the purpose of the rape investigation itself. Furthermore, once the State had validly obtained the sample, as it did when Varriale consented to the taking of the sample in connection to the rape investigation, it had no obligation to obtain a warrant before using the sample in a subsequent investigation. *Williamson*, 413 Md. at 547; *Wilson*, 132 Md. App. at 550. Accordingly, we reject Varriale's Fourth Amendment challenge to the use of his DNA sample.

**II.**

Varriale next argues that Maryland's DNA Collection Act does not permit the retention of a person's DNA if he or she has been cleared of suspicion in the investigation in which the sample was obtained. We review Varriale's argument under the same standards that we articulated above.

Varriale predicates his argument on Md. Code (2003, Repl. Vol. 2011) § 2-511(c) of the Public Safety Article. In pertinent part, that statute provides that "any DNA samples and records generated as part of a criminal investigation or prosecution shall be destroyed or expunged automatically from the State DNA database if: (i) a criminal action begun against the individual relating to the crime does not result in a conviction of the

individual . . . ."[4]

---

[4] In full, § 2-511(c) provides as follows:

 (a) (1) Except as provided in paragraph (2) of this subsection, any DNA samples and records generated as part of a criminal investigation or prosecution shall be destroyed or expunged automatically from the State DNA data base if:

  (i) a criminal action begun against the individual relating to the crime does not result in a conviction of the individual;

  (ii) the conviction is finally reversed or vacated and no new trial is permitted; or

  (iii) the individual is granted an unconditional pardon.

  (2) A DNA sample or DNA record may not be destroyed or expunged automatically from the State DNA data base if the criminal action is put on the stet docket or the individual receives probation before judgment.

 (b) If the DNA sample or DNA record was obtained or generated only in connection with a case in which eligibility for expungement has been established, the DNA sample shall be destroyed and the DNA record shall be expunged.

 (c) Any DNA record expunged in accordance with this section shall be expunged from every data base into which it has been entered, including local, State, and federal data bases.

 (d) An expungement or destruction of sample under this section shall occur within 60 days of an event listed in subsection (a) of this section.

 (e) A letter documenting expungement of the DNA record and destruction of the DNA sample shall be sent by the Director to the defendant and the defendant's attorney at the address specified by the court in the order of expungement.

 (f) A record or sample that qualifies for expungement or destruction under this section and is matched concurrent with or subsequent to the date of

(continued...)

When we interpret statutes, we begin by examining the "normal, plain meaning of the language of the statute." *Doe v. Montgomery Cnty. Bd. of Elections*, 406 Md. 697, 712 (2008). Parsing the words of this particular statute, it appears that two requirements must be met to trigger the expungement of the DNA records: (1) a "criminal action" must have begun against a person, and (2) the person must not have been convicted of the crime with which he or she was charged. Here, Varriale certainly met the second criterion, as he was never convicted of the alleged rape; he did not, however, meet the first, as the State never began a "criminal action" against him as a result of the rape investigation.

While the Act does not define the term "criminal action," a common definition of the term envisions a formal proceeding in which a person has been charged with a crime. *See Ballentine's Law Dictionary*, 3d Ed. (2010) (defining criminal action as "an action by the sovereign . . . against one charged with the commission of a criminal act, for the enforcement of the penalty or punishment prescribed by law"). Varriale, however, was

---

[4] (...continued)
qualification for expungement:

      (1)   may not be utilized for a determination of probable cause regardless of whether it is expunged or destroyed timely; and

      (2)   is not admissible in any proceeding for any purpose.

   (g)   The Director shall adopt procedures to comply with this section.

never charged with the alleged rape nor arrested for it. Thus, it appears that he does not meet the criteria that triggers the expungement required by this Act.

Indeed, if we interpreted the term "criminal action" to cover a mere criminal investigation, as Varriale suggests we should, then it is unclear when the actual expungement would have to occur. Md. Code (2003, Repl. Vol. 2011) § 2-511(d) of the Public Safety Article dictates that expungement "shall occur within 60 days" of when a "criminal action begun against the individual relating to the crime does not result in a conviction of the individual." *Id.* § 2-511(a). If, however, an investigation never leads to formal criminal charges, it would be challenging to ascertain precisely when a conviction failed to occur and thus when the 60-day period would begin to run. The administrative difficulty in ascertaining the answer to that question strongly suggests the term "criminal action," in § 2-511(d), cannot mean a mere criminal investigation, but must instead mean the initiation of formal criminal charges. Thus, because Varriale did not face formal criminal charges as a result of the investigation in which he consented to the taking of his DNA sample, he cannot claim the benefit of the expungement provisions of § 2-511(d).

While it may seem anomalous that a volunteer like Varriale would have fewer statutory protections than someone who had been charged with or even convicted of a serious criminal offense, the anomaly is a result of the history and structure of the DNA Collection Act itself. When it was initially enacted in 1994, the Act authorized the collection, retention, and (in some cases) expungement of DNA only from persons who

-11-

had been convicted of felonies or of other enumerated crimes. *See State v. Raines*, 383 Md. 1, 10-12 (2004). In 2008, the General Assembly amended the Act to extend its provisions, including the expungement provisions, to persons who had been charged with a crime of violence, an attempt to commit a crime of violence, burglary, or an attempt to commit a burglary. Md. Code (2003, Repl. Vol. 2011) § 2-511(d) of the Public Safety Article. The General Assembly, however, has yet to extend the expungement provisions to persons like Varriale, who voluntarily consent to the taking of a DNA sample. Indeed, in 2013 the General Assembly considered, but failed to pass, a bill that would have effectively prohibited a governmental unit from storing DNA samples from persons who, like Varriale, had voluntarily given a sample. *See* H.B. 1523 (2013 Session). This legislative history confirms that the DNA Collection Act applies only to persons who have given DNA samples after being charged with or convicted of certain enumerated crimes; it does not apply to Varriale.

We arrive at the same conclusion by reading the Act as a whole, as we are required to do. *See, e.g.*, *Howell v. State*, 278 Md. 389, 392 (1976). For example, § 2-504(b) of the Act dictates the places where a DNA sample "shall be collected":

(1) at the time the individual is charged, at a facility specified by the Secretary [of State Police];

(2) at the correctional facility where the individual is confined, if the individual is confined in a correctional facility on or after October 1, 2003, or is sentenced to a term of imprisonment on or after October 1, 2003;

(3) at a facility specified by the Director [of the State Crime Laboratory], if the

-12-

individual is on probation or is not sentenced to a term of imprisonment; or

(4) at a suitable location in a circuit court following the imposition of sentence.

Md. Code (2003, Repl. Vol. 2011) § 2-511(d) of the Public Safety Article.

All of these are places where a person would be found only if he or she had been "charged" with an offense, "confined" for committing an offense, "on probation" for committing an offense, or awaiting "the imposition of sentence." This language, therefore, also confirms that the DNA Collection Act applies only to persons who have given DNA samples after being charged with or convicted of certain enumerated crimes; it does not apply to persons like Varriale, who voluntarily give a DNA sample without having been charged with or convicted of any crime.

Furthermore, we must give "considerable weight" to an administrative agency's interpretation and application of the statute that the agency administers. *Bowen v. City of Annapolis*, 402 Md. 587, 612 (2007). Here, the Maryland Department of State Police, in promulgating regulations under the statute, made them applicable only to persons who have been "arrested and charged or convicted, or both," of various specified crimes. COMAR 29.05.01.02.A(1). We defer to the agency's deliberate and well-publicized interpretation that the statutory protections do not extend to persons in Varriale's position.

Varriale advances a number of policy arguments in favor of his interpretation of the DNA Collection Act. Most notably, Varriale argues that it makes little sense to require the expungement of DNA samples from persons who have been charged with and

even convicted of serious crimes, but not to require the expungement of samples from persons who voluntarily cooperated with a police investigation and were charged with no crimes at all. In particular, he argues that citizens might be deterred from cooperating with the police if the State and its instrumentalities can upload, store, and analyze their DNA samples in perpetuity. We think that these arguments, as sensible as they are, are better directed to the General Assembly. We cannot torture the plain language of the statute to reach a conclusion that the language itself simply does not allow.

In summary, finding neither a Fourth Amendment violation nor a DNA Collection Act violation, we conclude that the trial court did not err when it refused to suppress Varriale's DNA evidence. We affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**